(95 South. 577)

## COSTON–RILES LUMBER CO. v. ALABAMA MACHINERY & SUPPLY CO.
(3 Div. 582.)

(Supreme Court of Alabama.   Feb. 8, 1923.
Rehearing Denied Feb. 16, 1923.)

1. **Principal and agent** ⊚99—**Every grant of power implies use of incidental means thereto.**

Generally, every grant of power implies and carries with it as an incident authority to do whatever acts, or use whatever means, are reasonably necessary and proper to the accomplishment of the purpose for which an agency was created.

2. **Principal and agent** ⊚109(1)—**Authority to execute promissory note to secure existing indebtedness implies power to make valid obligation.**

Authority to execute a promissory note to secure existing indebtedness necessarily implies the power to make and deliver a note containing everything necessary to create a valid and effective obligation to pay.

3. **Corporations** ⊚414(5)—**Provision in notes of corporation as to venue held void as exceeding authority of treasurer to execute them.**

Defendant corporation, domiciled and doing business in J. county and not in M. county, authorized its treasurer to execute its notes to plaintiff corporation for the amount owing it. Each note executed contained a provision that all suits for collection thereof should be prosecuted in M. county and not elsewhere. *Held,* that, the venue provision not being necessary to the full exercise of the authority granted to the treasurer, its inclusion was neither natural nor to be expected, was in excess of his authority, and did not bind the corporation.

Thomas, J., dissenting.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Action by the Alabama Machinery & Supply Company against the Coston-Riles Lumber Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

The appellee, Alabama Machinery & Supply Company, sued appellant, Coston-Riles Lumber Company, in the circuit court on certain promissory notes specifically set up in defendant's pleading. Both of said parties were domestic corporations. It is specifically averred in the complaint that—

"All suits for the collection for said goods or of notes given or for the recovery of said goods or for damages growing out of this contract or the seizure of said goods shall be prosecuted in Montgomery county, state of Alabama, and not elsewhere."

Defendant specially pleaded in abatement, which plea is set out in the concurring opinion of McCLELLAN, J.

The defendant being indebted to plaintiff, on January 11, 1921, at a meeting of directors of the corporation "report of finance committee, and after discussion, a motion by C. J. Donald and seconded by M. C. Thomas that the secretary-treasurer be authorized to execute to the Alabama Machinery & Supply Company, the company's note for four months for the amount we owe them. Carried." The record further shows that pursuant to this authority, said secretary-treasurer gave to plaintiff four promissory notes executed as that of the corporation by W. L. Coston, secretary-treasurer, containing the provisions as to venue above set out. Said Coston testified as to his position and authority; that he was the secretary-treasurer of the corporation when the note was contracted, the authority given, and the notes were executed; that he had in his possession the minutes of the corporation; and that he "was authorized to sign the note." Witness having produced the minutes of the corporation testified that the same were "of the Board of Directors of that corporation"; that said directors were present when the resolution was passed; that the minutes were not signed, but that the witness duly "wrote them up"; that the minutes stated what took place at the meeting. The charter of the corporation, the minutes of the board of directors, and the notes declared on, were, respectively, offered in evidence, to which objection was duly assigned, overruled, and exception reserved, and the respective documents admitted in evidence.

The evidence further showed that the principal place of business of the corporation was in Jefferson county, the principal and only office being in Bessemer, in that county; that it had no other office in the state; and on cross-examination the witness testified that the corporation had no office or agent doing business in Montgomery county; that when he signed the notes he did not know they contained any waiver of venue or jurisdiction of action, nor did the directors know when they passed the resolution that the notes to be signed would contain provision that suit may be brought thereon in the courts of Montgomery county. The witness stated the resolution of the board of directors, that he understood "them to authorize the signing of an ordinary waive note," and did not know the note contained the provision in question when he signed it.

On the evidence adduced the trial judge instructed the jury at plaintiff's request to find for the plaintiff if they believed the evidence, and there were verdict and judgment for the plaintiff accordingly. From that judgment, the defendant appeals.

Huey & Welch, of Bessemer, and James J. Mayfield, of Montgomery, for appellant.

The exercise by a corporation of this state of the power to change the venue of actions

brought against it is ultra vires. 7 R. C. L. 526; 5 Port. 279, 30 Am. Dec. 564; 76 Ala. 572, 52 Am. Rep. 353; 87 Ala. 344, 6 South. 122, 5 L. R. A. 100. Such power, if not ultra vires, would require corporate action by the stockholders or directors to bind the corporation. 83 Ala. 260, 4 South. 34; 102 Ala. 420, 14 South. 872; 109 Ala. 671, 19 South. 896, 55 Am. St. Rep. 950; 105 Ala. 399, 17 South. 91; 124 Ala. 245, 27 South. 425. Directors of a corporation have no authority to make fundamental changes in the purposes, objects, and scope of the corporation. 61 Ala. 559; 120 Ala. 128, 26 South. 494.

W. Marvin Scott, of Birmingham, and Ball & Beckwith, of Montgomery, for appellee.

The defendant had the right to waive its personal privilege as to venue. 202 Ala. 329, 80 South. 410; 207 Ala. 215, 92 South. 260; 193 Ala. 289, 69 South. 466; 2 Fletcher, Corp. 1756. The secretary-treasurer was fully authorized by the board of directors to give such note as might be agreed upon between him and appellee. 5 Words and Phrases, 4836; 6 Words and Phrases, 5676.

SOMERVILLE, J. As shown by the statement of facts above, the defendant corporation, domiciled and doing business in Jefferson county, and not doing business in Montgomery county, authorized its secretary-treasurer, by a resolution duly shown by its minutes, to execute to the plaintiff corporation "the company's note for four months for the amount we owe them."

Under that authority, thus expressed, defendant's secretary-treasurer closed up defendant's indebtedness to plaintiff by executing four several promissory notes, reciting that they were given for the purchase money for certain machinery, the title to which was reserved in the vendor-payee until the notes were paid, with the right to take possession thereof in case of default in payment; and each note contained this provision:

"All suits for the collection for said goods or of notes given, or for the recovery of said goods, or for damages growing out of this contract or the seizure of said goods, shall be prosecuted in Montgomery county, state of Alabama, and not elsewhere."

The printed forms used for these notes were furnished by the payee, and the presence of this venue clause in the notes was not known to the defendant corporation, and was not observed by its officer who executed the notes nor known to him until this suit was filed.

The question, therefore, is whether the express authority given to defendant's secretary-treasurer to execute notes for its indebtedness to plaintiff included or implied an authority to waive defendant's statutory right to be sued on the notes only in Jefferson county, and to stipulate that such suit should be brought only in Montgomery county—a venue not otherwise available to plaintiff.

[1] We think that an application of the settled principles of the law of agency to this case requires a negative answer. "As a general rule of law every grant of power implies and carries with it, as an incident, authority to do whatever acts, or use whatever means are reasonably necessary and proper to the accomplishment of the purpose for which the agency was created. * * * Such incidental authority includes all acts and things which are connected with and essential to the business in hand; it is measured by the nature and necessities of the purpose to be accomplished, and is prima facie coextensive with the business intrusted to the agent's care. The means adopted, however, should be such as are most usual, such means indeed as are ordinarily used by prudent persons in doing similar business." 2 Corp. Jur. 578, § 220; Hall, etc., Co. v. Harwell, 88 Ala. 441, 6 South. 750; Scales v. Mount, 93 Ala. 82, 9 South. 513.

"As a general rule, the authority of an agent will not be extended beyond that which is given in terms, or is necessary and proper to carry the authority given into full effect." Scales v. Mount, 93 Ala. 82, 83, 9 South. 513.

[2] Authority to execute a promissory note to secure existing indebtedness necessarily implies the power to make and deliver a note containing everything necessary to create a valid and effective obligation to pay; and, perhaps, such an authority would ordinarily permit the inclusion in the note of such other stipulations, designed to strengthen the obligation and facilitate its enforcement, as, by general custom and common use, are incorporated with the promise to pay.

[3] Very clearly, the venue provision here asserted was not necessary to the full exercise of the authority granted, and its inclusion in promissory notes is neither usual nor to be expected. In accord with this view, we have recently held that a note containing this very provision was, as a matter of law, not an ordinary promissory note. Stewart v. Capital Fert. Co., 207 Ala. 596, 93 South. 641. And in City Bank of Wheeling v. Bryan, 72 W. Va. 29, 78 S. E. 400, 404, the Supreme Court of West Virginia held that an agent's authority to execute promissory notes for the principal's debt did not include an implied authority to stipulate in the notes that any attorney could appear for the maker in a court of record, and waive process and confess judgment in favor of the payee; and that such a stipulation was therefore utterly void.

We think and hold that the venue provision here in question was in excess of the agent's authority to execute the notes, and that it is not binding on his principal, this defendant.

It results that the plea in abatement should have been sustained instead of denied, and the judgment of the circuit court was grounded in error.

Let the judgment be reversed and the cause remanded for another trial in accordance herewith.

Reversed and remanded.

All the Justices concur, except THOMAS, J., who dissents.

SAYRE, GARDNER, and MILLER, JJ., concur in the opinion.

ANDERSON, C. J., and McCLELLAN, J., concur on the ground that the stipulation in question was ultra vires of the defendant corporation.

McCLELLAN, J. (concurring specially). The writer concurs in the reversal of the judgment; but, upon the different ground to be stated.

The action is by the appellee against the appellant, seeking recovery upon promissory notes purported to have been executed by the latter to the former. In all of the counts of the complaint it is alleged:

"The plaintiff further avers that in and by said note the defendant agreed that all suits for the collection thereof should be prosecuted in Montgomery county, state of Alabama."

No demurrer was interposed to the complaint.

The only response to the complaint filed by the defendant, denominated "a plea in abatement," reads:

"Comes the defendant, Coston-Riles Lumber Company, a corporation, and appears specially for the purpose and purpose only of pleading in abatement of this suit. Comes the defendant, and for its plea in abatement of this action says that the plaintiff ought not to be allowed to further prosecute this action brought against this defendant in this court or in this county for that the defendant is a domestic corporation organized under the laws of Alabama with its chief place of business in the city of Bessemer in Jefferson county, Ala. That the defendant corporation is not now and has not heretofore done business in the county of Montgomery by agents. That its principal place of business and the place where it does business in this state by agents is in the city of Bessemer in the county of Jefferson and in the state of Alabama; and that it is suible (suable) in the county of Jefferson and in the Bessemer division of the circuit court of Jefferson county, Ala.; and it is not suible (suable) on this action in the county of Montgomery.

"The defendant denies that it as a body corporate ever agreed that all suits for the collection of the note sued on in this action should be prosecuted in Montgomery county in the state of Alabama; and that no person, officer, or agent had any authority in fact or in law to bind this defendant by any writing or otherwise that all suits for the collection of the note sued on herein should be prosecuted in Montgomery county in the state of Alabama.

Wherefore the defendant prays that this action brought by the plaintiff against the defendant be abated, and the defendant be allowed to go hence and recover its costs of the plaintiff."

No demurrer to the defendant's plea appears in the original transcript; the minute entry reciting, "issue being joined between the parties upon said sworn plea in abatement."

After hearing upon testimony taken, including the defendant's articles of incorporation, the trial court gave the general affirmative charge in favor of the plaintiff "on the plea in abatement," and refused a like instruction in defendant's favor on the issues tendered by "the plea in abatement."

In Stewart v. Capital Fert. Co., 207 Ala. 596, 93 South. 641, 643, 644, where the note declared on was executed by an individual, not a corporation, the writer, in a separate opinion, expressed the view that a stipulation, in such a promise to pay, surrendering or waiving in advance venue (Code, § 6110) of an action on the promise or obligation to pay the sum stated, was a separate and separable stipulation, requiring a distinct consideration, from that afforded by the sum the payor promises to pay, to support the law-established right to be sued in the county of his residence. Ala. Code, § 6110; Nute v. Ins. Co., 6 Gray (Mass.) 174, 181, 182; Hall v. Ins. Co., 6 Gray (Mass.) 185, 192. In City Bank v. Bryan, 72 W. Va. 29, 78 S. E. 400, 404, cited in the majority opinion, the West Virginia court expressly ruled that an unauthorized, invalid, somewhat similar stipulation in a note was separable; and that its elimination did not avoid the obligation. Pertinent to this question, Shaw, C. J., wrote in Nute v. Ins. Co., 6 Gray (Mass.) 182, that there is "the distinction between that which is matter of contract and may be a proper subject of consideration, * * * and that which is matter of remedy regulated by law. * * *" In the same connection, in that decision, the learned Chief Justice also observed that a stipulation as to venue of an action to enforce the contract could not "be regarded as a condition of the contract." Nashua Paper Co. v. Hammermill, 223 Mass. 8, 111 N. E. 678, L. R. A. 1916D, 691.

In Stewart v. Capital Fert. Co., 207 Ala. 596, 93 South. 641, 643, 644, the question was raised by demurrer to plaintiff's replication. The sufficiency of the present complaint, in this particular, was not tested by motion to strike or by demurrer. No plea to the merits was so interposed as to tender an issue on this separate and separable feature of the contract declared on. The "plea in abatement," reproduced ante, was not tested by demurrer. The hearing proceeded upon the theory that it comprehended the issue whether the stipulation with respect to suits on the contract was ultra vires the corporation; the articles of incorporation being introduced

in evidence. It is but trite to remark, in the language of 14 A Corpus Juris, p. 249, that—

"There, is this difference, * * * between the powers of a corporation and the powers of a natural person. The latter can do anything not forbidden by law. The former can only do what is expressly or impliedly authorized by its charter."

This distinction pointedly distinguishes the present appeal from that in Stewart v. Capital Fert. Co., 207 Ala. 596, 93 South. 641, where the payor in the instrument was an individual. See, also, for pertinent statements, pages 246–251 of 14 A Corpus Juris.

The charter of a corporation, incorporated under general law, includes "any other laws of the state which are made applicable to such corporations." 14 A Corpus Juris, subd. 2094, pp. 258, 259; 14 A Corpus Juris, subd. 2105, p. 265, where it is well observed:

"Such laws [i. e. general laws and police regulations] are to be read into their [corporations'] charters, and they cannot conduct their business in disregard of them any more than an individual may; unless expressly and constitutionally exempted from their operation."

In Tuscaloosa Art Ass'n v. State ex rel., 58 Ala. 54, 59, it was affirmed, Stone, J., writing "that the public have an interest even in private corporations, and in their uses and abuses."

Code, § 6112, provides that a foreign or domestic corporation may be sued in any county in which it does business by agent. This statute, a general law applicable to the corporation-defendant, is to be read into and forms a part of the charter of this corporation. Author, supra. This incorporation was formed under general law, not by special act. Manifestly, this corporation is without any semblance of authority or power to avert or to avoid by contract stipulation the prescription for venue of actions against such corporations made in Code, § 6112, which, as stated, is as much an element of its charter as if the provisions of such section (6112) were actually incorporated in the charter of the corporation. Being so elemental of the charter, neither the corporation itself nor its officers, whatever their rank, could contract in contravention of the statute governing the venue of actions against the corporation. The articles of incorporation of this defendant, set forth in the bill of exceptions, do not contain even a remote or fanciful suggestion or intimation that the corporation was authorized to barter or contract away or surrender the law's express direction with respect to the venue of suits against it.

This corporation being indisputably shown to have been without power or authority to contract in avoidance of the venue statute, the trial court erred in giving the affirmative instruction in plaintiff's favor.

The Legislature, present (1923) session, has so amended the venue statutes as to preclude the surrender or waiver of venue by contract.

On these considerations, I concur in the judgment of reversal.

THOMAS, J. (dissenting). Provisions of the charter offered in evidence are:

"(K) To borrow money and execute the corporation's note or notes therefor and secure the same, if desired, by mortgage or pledge of its real or personal property, one or both, or any part thereof; (L) to further have and exercise all of the powers and rights and discharge all of the duties, regardless of whether they are expressly given or imposed herein or not, that are given and imposed on such corporations by article five of chapter 69, of the Code of Alabama of 1907, and the amendments to the respective pertinent sections thereof; * * * (N) to have, enjoy, and exercise all of the powers, privileges and immunities and to be subject to all of the liabilities conferred or imposed by the Constitution and laws of this state on such corporations."

Among the general express powers of business corporations contained in section 3481 of the Code of 1907 are:

"* * * To borrow money, issue notes, bonds, or other negotiable paper or mortgage, pledge, or otherwise transfer or convey its real and personal property to secure the payment of money borrowed or any debt contracted, unless otherwise provided. * * * That the board of directors may mortgage or otherwise pledge, transfer, or convey the personal property of the corporation to secure money borrowed by it, and any debt contracted by it without first obtaining the consent of the stockholders."

If the board of directors of the corporation had authorized its secretary-treasurer to give a certain form of note—as a negotiable or nonnegotiable note—and there was excess of authority in the act of giving a different note, the act would not be binding on the corporation "in the absence of some matter of estoppel," or in the absence of evidence authorizing the creditor or payee in the note to act with the corporation's designated agent in the matter of or to the extent he had the apparent authority committed to him, acting for the corporation in and about the corporation's business and with a stranger, who was not held to notice of by-laws placing restrictions on the apparent authority of corporate agents. Buck Creek Lbr. Co. v. Nelson, 188 Ala. 243, 247, 66 South. 476; So. States Fire Ins. Co. v. Kronenberg, 199 Ala. 164, 74 South. 63. In the instant matter the board of directors, having confidence in its secretary-treasurer, gave him full authority to negotiate with plaintiff to close the matter of its present open account and extend the date of payment thereof by giving the company's notes. It appears to have been the intent of the board of directors, in the authority given, not to limit that agent's act to the giving of a "negotiable promissory note" (Code 1907, § 5131); and

that he was authorized to execute such other form of note, or evidence of debt, as may be required by the creditor. If a negotiable promissory note had been given, could it be said that such authority was not given? So, also, if provisions were contained in the notes making the same nonnegotiable.

An examination of the charter, exhibited in the evidence, discloses no prohibition against the corporation contracting with reference to venue of suits against it on said notes. It must therefore follow that if such contract does not violate either the expressed or implied powers of the corporation, it was not an excess of authority on the part of the directors in granting this authority, or of its secretary-treasurer in the execution of the notes in form declared upon in the complaint.

· The law of venue, and that part having application to civil suits against corporations, is as follows:

"A foreign or domestic corporation may be sued in any county in which it does business by agent," etc. Code 1907, § 6112.

It is apparent that this statute is for the protection of the corporation, and as to personal or transitory actions such right is held to be a personal right that may be waived; there being no consideration of public policy or morals involved. Thompson v. Union Springs Guano Co., 202 Ala. 327, 80 South. 409; Hines v. Hines, 203 Ala. 633, 84 South. 712; Cleveland v. Little Cahaba Coal Co., 205 Ala. 369, 87 South. 567; Woolf v. McGaugh, 175 Ala. 299, 57 South. 754. The waiver was a "valuable element of the consideration supporting the contract" declared upon. Thompson v. Union Springs Guano Co., supra. The domicile of a corporation is the state under the laws of which it is formed; and, in a general sense, it is considered as a "person" within, or a "citizen" of, that state; and like reference may be made to the domicile of the corporation with reference to the county of its situs. If it conducts its business in different parts of the state, it must do so by agent, and the statute authorizes suits against it in any of such counties in which it "does business by agent."

The law of venue of actions against individuals, contained in section 6110 of the Code of 1907, provides, among other things, that—

"All actions on contracts, except as may be otherwise provided, must be brought in the county in which the defendant, or one of the defendants, resides, if such defendant has within the state a permanent residence."

This confers upon a defendant a personal privilege, and it is not essential to jurisdiction of the cause (where the court attempting to exercise it has jurisdiction of such action) that the suit be brought in the county of de-

fendant's residence. That is to say, from the holding that venue is a personal privilege which may be waived by a defendant's failure to complain against a suit filed against him in the county in which neither he, nor one of the defendants, resides, the court has extended the rule to the effect that the debtor might in advance stipulate in the contract the county in which he would be suable on or under that contract, and as a part of the valuable "consideration supporting the contract."

In Thompson v. Union Springs Guano Co., supra, the plaintiff being a corporation, it is declared, on authority of Woolf v. McGaugh, 175 Ala. 299, 307, 57 South. 754, that venue statutes, in civil actions, confer a mere personal privilege that may be waived by the party entitled to assert it; that it was competent for the parties to such a contract to stipulate therein that either may sue the other in an action founded on the contract, in any court within the state having jurisdiction of the subject-matter; and that although defendant's attention was not called to such stipulation in the note she signed (no misrepresentation having been made to her, and no concealment or deception practiced upon her to procure her signature), she was bound by her signature in that behalf. Thereafter, in Brown v. Alabama Chemical Co., 207 Ala. 215, 92 South. 260, the Thompson and Woolf Cases, supra, were reviewed, the Massachusetts case (Nute v. Hamilton Ins. Co., 6 Gray; 174) was discussed, the rule of the common law adverted to, and it was again declared, of the place of suits in transitory actions, that—

"The conclusion, * * * drawn by this court in Thompson v. Union Springs Guano Co., supra, and followed by the trial court in the case at bar, that such a stipulation is not contrary to public policy and should, at least in a case circumstanced as this, be enforced as a valuable element of the consideration supporting the contract, is sound."

The special circumstances of the Brown Case were that defendant had agreed in the note that suit might be brought in Montgomery county; whereas, the place of residence of the maker of the note was Lowndes county.

In the later case of Stewart v. Capital Fert. Co., 207 Ala. 596, 93 South. 641, the foregoing authorities were considered; the Chief Justice saying:

"The defendant interposed a plea to the venue, to which the plaintiff filed a replication setting up a clause in the note authorizing suit to be brought in Montgomery county, which this court has heretofore held was binding on the defendant. * * * But, if it contained the clause as set up in the replication, it was not, as matter of law, an ordinary waive note," etc.

The conclusion in the Stewart, Brown, and Thompson Cases, supra, was that the provi-

sion as to venue contained in the several notes declared upon was not void as against public policy, and was not ultra vires the corporation.

Since the venue statute (Code 1907, § 6110) merely confers a personal privilege, it would appear that the corresponding statute (Code 1907, § 6112), providing that the corporation "may be sued in any county in which it does business by agent," likewise confers upon the corporation a "personal privilege" as to venue. If this be true, in the absence of anything to the contrary in its charter, the corporation would have the same rights as the individual in that behalf. If the latter may stipulate in advance (as of a valuable right or a part of the consideration) as to the venue of suits on contracts between the individual and the corporation, it would seem that a like right obtained when the corporation contracted with its individual or corporate creditors. In Thompson v. Union Springs Guano Co., supra, the stipulation in question as to venue was declared to be "a valuable element of the consideration supporting the contract"; and this valuable right of contract is available to the parties alike, whether they be individuals or corporations. That is to say, this valuable right of contract being dealt with may not be given to the individual and withheld from the corporation, and not raise a fundamental question. Article 14, Const. of United States.

The necessarily implied powers are powers fairly regarded as incidental to and pertaining to the purpose of the creation of the corporation, and necessary and proper to carry into effect its express powers; and are discussed, or were the subjects of decision, in Ala. Red Cedar Co. v. Tenn. Valley Bank, 200 Ala. 622, 76 South. 980; Ala. G. S. R. Co. v. Loveman Compress Co., 196 Ala. 683, 72 South. 311; Ala. City G. & A. R. Co. v. Kyle, 202 Ala. 552, 554, 81 South. 54; Fairhope Single Tax Corp. v. Melville, 193 Ala. 289, 304, 69 South. 466; State ex rel. Perkins v. Montgomery Light Co., 102 Ala. 594, 15 South. 347; Steiner & Lobman v. Steiner Land & Lumber Co., 120 Ala. 128, 139, 26 South. 494; Chewacla Lime Works v. Dismukes, 87 Ala. 344, 6 South. 122, 5 L. R. A. 100; Central R. R. & B. Co. v. Smith, 76 Ala. 572, 52 Am. Rep. 353; Talladega Ins. Co. v. Peacock, 67 Ala. 253; Cunningham Hdw. Co. v. Gama Transportation Co., 4 Ala. App. 561, 568, 58 South. 740; Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 636, 4 L. Ed. 629, 659. See, also, 2 Fletcher, Cyc. Corp. pp. 1756, 1758, 1764–1767, § 792; section 233, Const. of 1901.

The charter of a corporation is to be read in connection with the general laws under which it was incorporated. This, in a sense, is a measure of its corporate powers. The corporation may, however, exercise such incidental powers as, under a reasonable construction of the charter and the general laws under which the corporation was created or consummated, may be fairly regarded as incidental to the purposes of its creation, and necessary and proper to carry them into effect. Under such general rule of construction, of charter powers of a corporation, in Steiner & Lobman v. Steiner Land & Lumber Co., 120 Ala. 128, 140, 26 South. 494, 497, is the declaration that—

"A corporation has implied power to make and indorse negotiable notes and bills in carrying on its lawful business, yet it is well established * * * that it has no power to make, indorse or accept, for the mere accommodation of others, notes and bills in which it has no interest, unless such power is expressly conferred, or is incidental to some other power expressly conferred." In re Tallassee Mfg. Co., 64 Ala. 567, 593.

I take it that the "general laws of the state of its creation" would not make of a corporation an exception as to the equal right of contract (a valuable consideration and right, Thompson v. Union Springs Guano Co., supra; Brown v. Alabama Chemical Co., supra) pertaining to venue. In my judgment the corporation and the individual have the same right of contract on this subject.

Of powers implied from powers expressly granted, the general rule is that the charter of a corporation impliedly confers upon it the power to make all contracts and to do all acts which are reasonably necessary to enable it to accomplish the objects of its creation, "to use the means necessary to effect that purpose" (2 Fletcher, Cyq. Corp. § 791, p. 1766), and to that end may enter into contracts and engage in transactions which are incidental or auxiliary to its main business, or which may become necessary, expedient, or profitable in the care, management, and disposition of the property which it is authorized to hold, manufacture, or dispose of under the act or statutes by which it was created, or in the collection of its debts. Paterson & Edey Lumber Co. v. Bank of Mobile, 203 Ala. 536, 84 South. 721.

In Mr. Fletcher's general classification of implied powers of a corporation are: (1) Acts in the usual course of business, as borrowing money; making ordinary contracts; executing promissory notes, checks, or bills of exchange; taking notes or other securities; acquiring personal property for use in connection with the business; acquiring and holding land and buildings to be used as places of business or in connection therewith; and selling, leasing, mortgaging, or other transfer of property of the corporation in connection with the running of the business. (2) Acts to protect and collect debts owing to the corporation, etc. Paterson & Edey Lumber Co. v. Bank of Mobile, supra.

It is settled in another jurisdiction that a

COSTON–RILES LUMBER CO. v. ALABAMA MACHINERY & S. CO.

corporation, not prohibited by law from doing so, and without any express power in its charter for that purpose, "may make a negotiable promissory note payable either at a future day or upon demand when such note is given for any of the legitimate purposes for which the company was incorporated" (Moss v. Averell, 10 N. Y. 449, 457, and authorities; Leih-Und-Sparkassa Aadorf v. Pfizer, 158 App. Div. 505, 143 N. Y. Supp. 744); and that the power on the part of the corporation to become a party to a negotiable instrument is implied when the nature and objects of the corporation are such that the transaction is necessary or proper in the conduct of its business (Police Jury v. Britton, 15 Wall. 566, 21 L. Ed. 251; Scott v. Bankers' Union, 73 Kan. 575, 85 Pac. 604; Pearce v. Madison, etc., Co., 21 How. [U. S.] 441, 16 L. Ed. 134). In Merchants' Natl. Bank v. Citizens' Gas Light Co., 159 Mass. 505, 34 N. E. 1083, 38 Am. St. Rep. 453, it was held that the authority of the officer to sign notes on behalf of the corporation need not appear in the by-laws, nor be expressly granted by a vote of the directors or stockholders; that if the corporation permits its treasurer to act as its fiscal agent, and holds him out to the public as having the general authority implied from his official name and character, and by its silence and acquiescence suffers him to draw and accept drafts, and to indorse notes payable to the corporation, it is bound by his acts within the scope of such implied authority. Alabama City G. & A. R. Co. v. Kyle, 202 Ala. 552, 556 (7), 81 South. 54.

In this jurisdiction it is held that an express grant of power to borrow money and issue bonds therefor, or to borrow money and secure the payment thereof by bond and mortgage, does not impliedly prohibit a corporation from borrowing money necessary in its business, and issuing negotiable notes and bills therefor. Talladega Ins. Co. v. Peacock, 67 Ala. 253, 260; McCullough v. Talladega Ins. Co., 46 Ala. 376; Talladega Ins. Co. v. Landers, 43 Ala. 115, 137. In the case of Talladega Ins. Co. v. Peacock, supra, Mr. Chief Justice Brickell says:

"It cannot be matter of doubt, that every corporation clothed with the powers conferred on this company [to borrow money and issue its bonds therefor], has an incidental and implied power to borrow money, and in the exercise of the power, may make paper negotiable, or not negotiable, *and give such securities as may be deemed most advantageous*. [Italics supplied]. The power, though it may not be expressly conferred, is implied and incidental, unless of it there is express prohibition." Alabama Gold Life Ins. Co. v. Central, etc., Ass'n, 54 Ala. 73; M. & C. R. R. Co. v. Talman, 15 Ala. 491; Allen v. Montgomery, etc., Co., 11 Ala. 454.

The prima facie presumption is that contracts by corporations are justified by their powers and are valid, and the burden of showing invalidity rests on the impeaching party. Touart v. Jett Bros. Cont. Co., 169 Ala. 638, 642, 53 South. 751; Marengo Abstract Co. v. Hooper & Co., 174 Ala. 497, 503, 56 South. 580; Perryman & Co. v. Farmers' Union, etc., Co., 167 Ala. 414, 418, 52 South. 644.

The provision of the Constitution (section 233) that "no corporation shall *engage in any business other than* that expressly authorized in its charter or articles of incorporation" has not been violated by giving the company's note (with the special provision as to the venue of suit on the note) securing the corporation's debt to appellee. (Italics supplied.) It was the exercise of its express powers or an act necessary and proper to carry into effect those powers in extending its credit. See Paterson & Edey Lumber Co. v. Bank of Mobile, supra; Ala. G. S. R. Co. v. Loveman Compress Co., supra, explaining Sales-Davis Co. v. Henderson-Boyd Lumber Co., 193 Ala. 166, 69 South. 527, and U. S. Cast Iron P. & F. Co. v. Bailey, 194 Ala. 261, 69 South. 825.

The contract, or notes with "provision as to venue of suits" thereon, was within the authority given and exercised by the secretary-treasurer and pursuant to resolutions of the board of directors; and that authority was not violative of the public policy of the state, the question of public policy being decided adversely to appellants in Thompson v. Union Springs Guano Co., supra; nor was the act ultra vires the corporation.

Mr. Fletcher says that so far as the contents and requisites of a bill or note are concerned, the same rule applies to paper executed by a corporation that governs such paper executed by an individual, except certain rules with regard to signatures; that if an authorized agent of the corporation draws a draft on it in favor of a third person for a debt due such third person from the corporation, it is in effect the note of the corporation, payable on demand. 2 · Fletcher, Cyc. Corp. § 956, p. 1910. The express authority given the secretary-treasurer was to purchase machinery, or to close the debit account therefor with plaintiff, by giving the company's note; and this he did for the corporation by executing its notes, upon which the suit was prosecuted to judgment. This act by the corporation was not beyond the actual or apparent authority of the executive agent of the corporation acting for it in the matter of the formal acknowledgment and evidencing the debt in the contract form and terms in which the postponement of the due date of that indebtedness of the corporation was contracted. It is the opinion of the writer that neither the conclusion announced by the majority, nor that on which the special concurrence of result by the CHIEF JUSTICE and Mr. Justice McCLELLAN is rested, is tenable.